(May 4, 1995)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JULIO VASQUEZ, Appellant. [626 NYS2d 111] —Judgment of the Supreme Court, New York County (Edward McLaughlin, J.), rendered July 25, 1990, convicting defendant, upon his guilty plea, of murder in the second degree and criminal possession of a weapon in the third degree, and sentencing him to concurrent indeterminate terms of imprisonment of from 15 years to life and from 2⅓ to 7 years, respectively, unanimously affirmed.

On this appeal, defendant maintains that his warrantless arrest, in a public place, was without probable cause and that, as a result, his statements admitting to the murder for which he was apprehended should be suppressed. It is defendant's contention that his arrest was unlawful because he was committing no act at the time of his apprehension which would constitute a predicate for his detention and that the evidence possessed by police was insufficient to provide probable cause that he had committed the crime of murder.

This case was previously heard by this Court in 1993 *(People v Vasquez, 200 AD2d 344, lv denied 84 NY2d 873)*. The appeal was held in abeyance and the matter remanded for a *Dunaway (Dunaway v New York, 442 US 200)* hearing based upon *People v Mendoza (82 NY2d 415 [Nov. 22, 1993, Kaye, Ch. J.])* and upon defendant's assertion, contained in his omnibus motion, that "it is not even claimed that the defendant was engaged in any illegal activity at the time of his arrest." The *Dunaway* hearing was held in October 1994, and Supreme Court issued a written opinion and order dated January 5, 1995. The decision contains detailed findings of fact and

concludes that the police had both probable cause to arrest defendant for murder and reasonable suspicion to stop and frisk him for possession of a weapon.

No warrant is required to arrest a suspect in a public place where there is probable cause to believe that he has committed a crime (*United States v Watson,* 423 US 411; *United States v Santana,* 427 US 38). There is no requirement that probable cause derive from a suspect's actions at the time of his arrest, and defendant's argument to this effect is entirely contrary to law (CPL 140.05, 140.10 [1] [b]; 140.15).

As Supreme Court found, the police had amassed ample information during the eleven days between the murder of Matilda Cotto, with whom defendant had been living, on February 20, 1990 and his arrest on March 3, 1990. It is disingenuous for defendant to suggest that the arresting officer, Detective Sergeant Jose Morales, who was a supervisor of the investigation by the Housing Police, was not familiar with investigative reports (DD-5's) filed by officers assigned to the case. When Ms. Cotto's body was discovered, a broken key was found in the lock. Defendant had a set of keys to the apartment, and both of the two other keys were accounted for and intact. Defendant's room appeared ransacked, and defendant's Goddaughter later told police that defendant had left a note for her stating that he was in trouble and would be gone a few days, but that she should not be frightened. She described defendant as a "very jealous individual" who had told her that "he had given up a lot for his girlfriend and that if she ever threw him out, he would kill her."

Police also learned that a man matching defendant's description had been seen in her company as she picked up a prescription from a neighborhood pharmacy between 3:00 and 4:00 P.M. on the day she was killed. A local postal worker informed police that, at about 6:00 P.M. that same day, he had met defendant on the street. Defendant said that he had been kicked out of the house and appeared to be shaken up.

On the day of the arrest, Detective Sergeant Morales received a telephone call from defendant's Goddaughter, whom he had earlier interviewed, and was informed that defendant was in a white van on 110th Street between First and Second Avenues. Defendant was reported to be wearing a leather jacket and to be armed with a gun. Morales, who had both a detailed description of defendant and his photograph, found him at the location, as reported. He approached defendant, drew his revolver, identified himself and placed defendant

under arrest. A search of defendant's person yielded a loaded revolver, carried in an inside jacket pocket.

It is clear that the police had ample information from which to conclude that defendant had committed a crime and, thus, possessed probable cause to arrest him (CPL 140.10 [1] [b]; *People v De Bour*, 40 NY2d 210, 223) and to conduct a search for weapons incident to the lawful arrest *(People v Smith*, 59 NY2d 454, 458). In addition, the report from a known informant that defendant was in possession of a gun, corroborated by the officer's independent observation, affords an independent basis for a frisk (CPL 140.50 [3]; *People v Salaman*, 71 NY2d 869). Concur—Murphy, P. J., Wallach, Rubin and Nardelli, JJ.